IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KERMIT POULSON,<br><br>        Plaintiff,<br><br>vs.<br><br>SGT. RICHTER,<br><br>        Defendant. | CV 14-185-M-DLC-JCL<br><br>FINDINGS AND<br>RECOMMENDATION |

This matter is before the Court on Defendant Reese Richter's Fed. R. Civ. P. 56 motion for summary judgment. For the reasons discussed, the Court recommends the motion be granted and this action be dismissed.

## I.  Background

Plaintiff Kermit Poulson is appearing pro se in this action. All other named Defendants have been dismissed, and Poulson's remaining claims are advanced only against Defendant Reese Richter.

In April 2014, and as a result of a criminal conviction and judgment imposed against Poulson under Montana law, Poulson served a period of his criminal sentence at the Missoula Sanction and Assessment Center ("Missoula

1

Center"). At all times relevant to Poulson's allegations, Richter was the State Unit Manager at the Missoula Center, and Poulson alleges Richter engaged in conduct which created adverse conditions imposed against him. Poulson's claims range from allegations that Richter provided him with supplies which cause cancer, failed to administer necessary medical treatment, failed to afford him due process with respect to disciplinary actions imposed against him, and retaliated against him. (Doc. 14 at 7-8 (summarizing Poulson's 12 specific claims against Richter).) Poulson asserts Richter's conduct violated his rights protected under the United States Constitution, and he advances his legal claims pursuant to 42 U.S.C. § 1983.

Richter moves for summary judgment dismissing all of Poulson's claims against him. Poulson, however, has not filed a brief in response to Richter's motion.

## II. Applicable Law - Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's

2

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

As noted, Poulson did not file a brief or evidentiary materials in response to Richter's motion. Nonetheless, the Ninth Circuit has made clear that a district court may not grant "summary judgment simply because a party fails to file an opposition[...]," and must "analyze the record to determine whether any disputed material fact [is] present." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010). *See also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (explaining that a nonmoving party's failure to file a response "does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law").

Finally, because Poulson is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Richter's summary judgment motion. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

### III. Discussion

Poulson's claims are advanced under 42 U.S.C. § 1983. Section 1983 permits claims under federal law against a local governmental entity, or a state official or employee, if the plaintiff can establish that "(1) the defendant[] acting

3

under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quotation and citation omitted).

Poulson's claims can be grouped into three categories. He alleges Richter violated his constitutional rights by (1) subjecting him to unconstitutional conditions of confinement at the Missoula Center, and failing to properly provide necessary medical treatment, (2) retaliating against him, and (3) violating his due process rights.

### A. **Conditions of Confinement and Medical Care**

Poulson's pleading asserts that while he was residing at the Missoula Center he was subjected to several adverse conditions and was not provided necessary medical care. He contends that the catheters and soap provided to him are products that cause cancer, that the catheters caused bleeding, that he did not receive necessary mattresses, anti-embolism stockings, wheelchairs, antibiotics, and Neurontin medication, that he was forced to take Lithium, that he was not provided medical treatment when he fell, and that he contracted MRSA and cellulitis.

Richter filed his affidavit in support of his summary judgment motion. In his affidavit Richter asserts he had no personal involvement in the specific

conduct or events which Poulson allege give rise to Richter's liability. Richter states he did not supervise, direct or control "jail medical or mental health staff[,]" and he "did not provide any medically related equipment, prescribe medications, diagnose ailments, or assist in medical care[]" during the time he worked at the Missoula Center. (Doc. 67 at ¶ 12.) He "had no individual role in Poulson's medical or mental health care[.]" (Doc. at ¶ 38.) He did "not order or provide catheters" or soap. (Doc. 67 at ¶¶ 40, 42.) He was unaware of Poulson's alleged need for a second mattress, anti-embolism stockings, a wheelchair, or antibiotics. (Doc. 67 at ¶¶ 43-47.) Richter states that medical care for inmates at the Missoula Center was provided by a private medical care contractor, and Richter was unaware of any wrongdoing committed by the contractor or other medical staff who were all personnel that Richter did not supervise. (Doc. 67 at ¶ 50.)

Based on Richter's lack of involvement with any of the conditions of Poulson's confinement and medical treatment provided to Poulson, Richter argues he is not liable for any alleged deprivations of Poulson's rights. The Court agrees.

Liability under section 1983 requires that a plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A defendant must have personally participated in, and had an integral involvement in

5

the alleged unlawful conduct. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008). The focus is on the specific facts of each individual's personal acts or omissions, and the direct causal connection between those acts and the constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988). A deprivation of a constitutional right exists only when a person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Richter's affidavit testimony establishes that, contrary to Poulson's allegations, he took no individual action which deprived Poulson of a constitutional right, and had no personal involvement with any conduct which allegedly violated Poulson's rights. Richter cannot be vicariously liable for the acts or omissions allegedly committed by others at the Missoula Center. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, Richter's motion should be granted in this respect.

### B. Retaliation

Poulson contends Richter retaliated against him when he refused to take his medications. Poulson asserts Richter retaliated against him by writing him up for disciplinary proceedings, and by sending him to Montana State Prison. But for the

6

reasons discussed, the facts presented in this case do not support Poulson's claims of retaliation.

The First Amendment to the United States Constitution protects an inmate's right to file grievances, and a state actor's retaliation against an inmate's exercise of that right is itself a constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The five basis elements of a claim of unconstitutional retaliation are:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. [citations omitted]. [A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm.

*Brodheim*, at 1269 (citations omitted).

Richter's affidavit establishes he was not involved with the alleged acts of retaliation. He affirmatively asserts he did not retaliate "against Poulson for not taking medications or for any other reason." (Doc. 67 at ¶ 49.) The disciplinary "write-ups" were imposed by officers other than Richter. (Doc. 67 at ¶¶ 26-27, 29-30; Doc. 66-6, 66-7, 66-8, 66-9.) And the decision to send Poulson to the Montana State Prison was made by a Montana Department of Corrections staff person, not Richter. (Doc. 67 at ¶ 35.) Therefore, the evidence of record

establishes Richter did not engage in the alleged retaliatory conduct, and his summary judgment motion should be granted.

## C. Due Process

Poulson alleges Richter deprived him of his due process rights under the Fourteenth Amendment. He asserts Richter refused to provide Poulson with a hearing for his disciplinary write ups. He also contends Richter denied him a hearing before Richter subjected him to corporal punishment.[1]

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. The clause provides a basis for both substantive and procedural due process claims.

To succeed with a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

In the context of disciplinary proceedings imposed against an inmate, due

---

[1] Richter affirmatively asserts he did not subject Poulson to corporal punishment. (Doc. 67 at ¶ 52.)

8

process triggers five procedural requirements: (1) written notice of the disciplinary charges, (2) a period of time not less than 24 hours after the notice of the charges and before a hearing, (3) written statement of the evidence and reasons for the disciplinary action, (4) the inmate's right to call witnesses and present evidence, and (5) assistance from another individual if the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564, 566, 570 (1974).

Two of the three disciplinary write-ups against Poulson satisfied the five procedural requirements identified in *Wolff*. The first incident report was made on April 9, 2014, and it provided Poulson with notice of the charges, the evidence, and the reasons. Poulson received the report on April 10, 2014, and a hearing was held on April 11, 2014. (Doc. 66-6 and 66-7.) The second incident report was made on April 17, 2014, it provided Poulson with notice of the charges and the evidence, and Poulson received the notice on April 23, 2014. A hearing was held on April 25, 2014. (Doc. 66-8 and 66-9.)

A third write-up was made on May 1, 2014. But the officers at the Missoula Center did not pursue that disciplinary action, no hearing was held, and no sanctions were imposed against Poulson because on April 30, 2014, the Montana Department of Corrections made the decision to transfer Poulson to the Montana State Prison. Thus the write-up did not deprive Poulson of any liberty interest.

9

Based on the foregoing, the record establishes that the conduct of the disciplinary actions against Poulson did not deprive him of his procedural due process rights under the Fourteenth Amendment. Specifically, contrary to Poulson's contention, Poulson was afforded a hearing on the first two disciplinary charges, and he was not deprived of any liberty interest on the third charge. Therefore, Richter is entitled to summary judgment dismissing Poulson's due process claims.

**IV.** **Conclusion**

For the reasons discussed, IT IS RECOMMENDED that Richter's motion for summary judgment be GRANTED, and this action be DISMISSED.

DATED this 27th day of July, 2016.

*/s/ Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge